# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

| | |
|---|---|
| **In re** | **Chapter 7** |
| **29 GORHAM STREET, LLC,** | |
| **Debtor.** | **Case No. 24-11004-JEB** |
| **HAROLD B. MURPHY, AS HE IS CHAPTER 7 TRUSTEE OF THE ESTATE OF 29 GORHAM STREET, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Adv. Proc. No. 24-** |
| **CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON, WALTERS, SHANNON & JENSEN, R. JACOB WALTERS AND DAVID J. JENSEN,** | |
| **Defendants.** | |
| **AND** | |
| **CITIZENS BANK, N.A., SANTANDER BANK, N.A., and EASTERN BANKSHARES, INC., f/k/a EASTERN BANK CORPORATION and Successor by Merger to CAMBRIDGE TRUST COMPANY,** | |
| **Trustee-Process Defendants** | |

## VERIFIED COMPLAINT
### PRELIMINARY STATEMENT

Harold B. Murphy, as he is the duly appointed Chapter 7 trustee (the "Trustee") of the

bankruptcy estate (the "Estate") of 29 Gorham Street, LLC (the "Debtor") brings this action

against Defendants Christopher A. Shannon individually and doing business as the Law Offices

of Christopher A. Shannon  (hereinafter, "Shannon"); the law firm of Walter, Shannon & Jenson;

1

R. Jacob Walters; and David J. Jensen, arising from Shannon's actions as attorney for the
Debtor.

While representing the Debtor as counsel, Shannon diverted not less than $850,000 of the
Debtor's funds from the Debtor's bank account and from funds he was holding in his IOLTA account
for the Debtor (the "Diverted Funds") and transferred the Diverted Funds to himself and/or to other
third parties for his or their benefit and not the Debtor's benefit. Following the filing of a Chapter 11
for the Debtor to prevent a foreclosure on the Property, Shannon has attempted to conceal his
transfers from the Trustee, the United States Trustee and the Court.

In addition to acting as counsel to the Debtor, Shannon acted as manager of the Debtor,
person in control of the Debtor, negotiator for the Debtor's purchase of real property known and
numbered as 29 Gorham Street, Chelmsford, Massachusetts (the "Property"), signatory on the
Debtor's bank account, keeper of the Debtor's records, controller of the Debtor's funds,
supervisor of the Debtor's renovations at the Property, and signor of multiple documents as
manager of the Debtor.

In connection with Shannon's actions, inactions and negligence while representing the
Debtor, the Trustee seeks: (i) to avoid, as constructive, actual fraudulent and/or insider
preferential transfers, Shannon's transfers of the Diverted Funds to himself and/or other third
parties for his or their benefit and not for the Debtor's benefit pursuant to 11 U.S.C. §§ 544, 548,
547, 550 and 551 and M.G.L. c. 109A; (ii) damages on account of Shannon's breach of his
fiduciary duties to the Debtor; (iii) to pierce the corporate veil and hold Shannon personally
liable for the debts of the Debtor on the grounds that, among other things, Shannon, acting as
person in control of the Debtor (a) commingled the Debtor's funds with his personal funds and
spent hundreds of thousands of the Debtor's funds for himself and/or other third parties for his or
their benefit and not for the Debtor's benefit without restriction and without substantiating

2

837580v1

documents, (b) failed to observe corporate formalities and (c) engaged in a pattern of conduct to

divert funds out of the Debtor's account and/or out of funds in his IOLTA account that belonged

to the Debtor in fraud of the Debtor's creditors, and (d) failed to keep and/or refused to produce

records of the Debtor so that the flow of the Diverted Funds to him and/or to third parties for his

or their benefit and not for the Debtor's benefit could not be traced; (iv) damages for legal

malpractice arising from his negligence in failing to use a reasonable degree of care and skill in

providing legal services to the Debtor for the matters for which he was retained and for the

damages caused to the Debtor as a result of that negligence, and (v) claims arising from

Shannon's conversion of the Diverted Funds.

Further, upon information and belief, during some or all of the relevant periods set forth in

the Complaint, Shannon was affiliated with the law firm of Walters, Shannon and Jensen (the "WSJ

Firm") and the two other members of the WSJ Firm, R. Jacob Walters ("Walters") and David J.

Jensen ("Jensen"). In the Complaint, the Trustee asserts claims against the WSJ Firm, Walters and

Jensen for legal malpractice for their negligence in failing to exercise reasonable care to ensure that

Shannon complied with his ethical responsibilities and did not engage in misconduct.

In support thereof, the Trustee respectfully states as follows:

## I.    PARTIES

1.      The Plaintiff, Harold B. Murphy, in his capacity as Trustee, is an individual with a

place of business at Murphy & King, Prof. Corp., 28 State Street, Suite 3101, Boston,

Massachusetts, 02109.

2.      Defendant Christopher A. Shannon is an individual who resides at 249 Woodcliff

Road, Newton, MA 02461 and who does business as the Law Office of Christopher A. Shannon and

maintains a business office 20 Walnut Street, Suite 201, Wellesley, Massachusetts, 02481. Shannon

3

formerly maintained a business office at 27 Harvard Street, Brookline, Massachusetts 02445.

Shannon is counsel to the Debtor in this case.

3.     Defendant Walter, Shannon and Jensen is a law firm which maintains offices at 27

Harvard Street, Brookline, MA 02445.  At all times relevant and material herein, including but not

limited to February 1, 2023 to the Petition Date, Defendants R. Jacob Walters, Christopher A.

Shannon & David J. Jensen held themselves out to the public as attorneys doing business as

Walters, Shannon and Jensen (the "WSJ Firm") engaged in the practice of law and maintaining

offices at 27 Harvard Street, Brookline, MA 02445.

4.     Defendant R. Jacob Walters ("Walters") is an attorney who maintains an office at 27

Harvard Street, Brookline, MA 02445.

5.     Defendant David J. Jensen ("Jensen") is an attorney who maintains an office at 27

Harvard Street, Brookline, MA 02445.

6.     Trustee Process Defendant Citizens Bank, N. A. ("Citizens") is a banking

institution that maintains its principal office at One Citizens Bank Way, Johnston, RI 02919.

Shannon maintains multiple business and personal accounts at Citizens, including the IOLTA

accounts ending in 5012 and 8570.  The Trustee is not seeking to attach Shannon's IOLTA

accounts by trustee process.

7.     Trustee Process Defendant Santander Bank, N.A. ("Santander") is a corporation

with its principal office located at 75 State Street, Boston, Massachusetts 02109. Santander

maintains a registered agent office located at Corporation Service Company, 84 State Street,

Boston, Massachusetts.  Upon information and belief, Shannon maintains business and personal

bank accounts at Santander.

8.     Trustee Process Defendant Eastern Bankshares, Inc. ("Eastern") f/k/a Eastern

Bank Corporation, and successor by merger to Cambridge Trust Company, has a principal office

4

located at 125 High Street, Oliver Street, Suite 901, Boston, Massachusetts 02110, and has a

registered agent, Kathleen C. Henry, at the same address.  Upon information and belief, Shannon

maintains business and personal accounts at Eastern and formerly held business and personal

accounts at Cambridge Trust Company.

## II.    JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction over this adversary proceeding pursuant to

28 U.S.C. §§1331, 1334.

10.     The counts in this Complaint are core proceedings pursuant to 28 U.S.C.

§157(b)(2)(A), (H), (K) and (O).

11.     Venue in this district is proper pursuant to 28 U.S.C. §§1408, 1409.

12.     This Court has personal jurisdiction over the defendants pursuant to Federal Rule of

Bankruptcy Procedure 7004(f).

## III.    FACTUAL STATEMENT

### A.    CASE BACKGROUND

13.     On May 21, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United

States Bankruptcy Court for the District of Massachusetts (the "Court").

14.     The petition commencing the Debtor's Chapter 11 case was signed by Jeramy Curcio

("Curcio"), as Manager of the Debtor.

15.     Shannon signed the voluntary petition as counsel to the Debtor.

16.     The primary asset of the Debtor is the Property, which consists of certain contiguous

parcels of real property and a house situated on one of the parcels.

17.     The Debtor's Chapter 11 petition was filed to stay a foreclosure sale of the Property

scheduled for the following day.

5

**B.**  **DEBTOR BACKGROUND**

18.    The Debtor is a Massachusetts limited liability company, formed on February 3,

2023 to purchase and renovate the Property.

19.    According to public records of the Secretary of State for the Commonwealth of

Massachusetts, Curcio is the manager of the Debtor and Shannon is the Registered Agent for the

Debtor.

20.    On or about February 25, 2024, Shannon and Curcio opened an account for the

Debtor at Citizens with an account number ending in 6485 (the "Debtor's Account").  Shannon and

Curcio are the authorized signatories for the Debtor's Account.

21.    On February 24, 2023, Shannon arranged for the Debtor to purchase the house and

adjacent lot that is part of the Property from Shawn and Lauren McDonough (the "Sellers") for the

stated purchase price of $665,000.  On January 25, 2024, Shannon arranged for the Debtor to

purchase the remaining portion of the Property from the Sellers for the stated purchase price of $10.

Shannon prepared the deeds to the Property and caused them to be recorded with the Registry of

Deeds.

**1.**    **Debtor's Loan from Loan Funder, LLC**

22.    Also on February 24, 2023, in connection with the purchase of the Property,

Shannon arranged for the Debtor to borrow funds from Loan Funder, LLC ("Loan Funder") and

to execute documents in connection therewith, including: (i) a Commercial Non-Revolving Line

of Credit Promissory Note (the "Loan Funder Note") that became due in one year, in the face

amount of $664,000 in favor of Loan Funder, LLC ("Loan Funder"); (ii) a Commercial

Mortgage, Security Agreement and Fixture Filing (the "Loan Funder Mortgage") granting a

mortgage on the Property to Loan Funder, and (iii) a Loan Agreement with Loan Funder (the

"Loan Agreement," and together with the Note and the Mortgage, the "Loan Funder Loan").

Curcio executed all documents in connection with the Loan Funder Loan as manager of the Debtor, including a Commercial Guaranty.

23.    Shannon represented the Debtor in connection with the purchase of the Property, acted as Settlement Agent on the closing of the purchase and sale of the Property and prepared the closing documents, including the HUD Settlement Statement.

24.    According to the Loan Agreement and the HUD Settlement Statement, it appears that a substantial portion of Loan Funder Loan proceeds was held back by Loan Funder, including a construction holdback and other fees and charges.

25.    On February 27, 2023, $497,658.80 was wired into Shannon's IOLTA account at Citizens ending in 5012 ("IOLTA #5012"), which funds appear to represent the proceeds of the Loan Funder Loan that were advanced at closing.

26.    On March 1, 2023, Shannon caused the Sellers to be wired only $445,467.60 from IOLTA #5012 rather than the purchase price of $665,000 and instead prepared two promissory notes to the Sellers from the Debtor for the balance of the purchase price in the approximate amount of $200,000.  Shannon also prepared a mortgage from the Debtor to the Sellers which he notarized but never recorded with the Registry of Deeds.

27.    Upon information and belief, Shannon retained and/or dissipated the remaining $52,191.20 of funds advanced to the Debtor by Loan Funder (the "Initial Advance") for himself, and/or other third parties for his or their benefit and not for the Debtor's benefit.

28.    Thereafter, upon information and belief, Shannon applied for two loan advances from Loan Funder for the stated purpose of performing renovations on the Property.

29.    On 5/4/2024, Loan Funder advanced $18,600 ("Advance 1") to the Debtor's Account by wire transfer.

837580v1

30.    Rather than paying for costs to renovate the Property, Shannon transferred
Advance 1 to several parties in varying amounts, including $7,650 to his personal bank account
at Citizens, Account No. 9062, $7,100 to IOLTA #5012 and $1,000 to the bank account at
Citizens under the name the Law Office of Christopher A. Shannon at Citizens, Account No.
8647.

31.    On 5/15/2024, Loan Funder advanced $4,500 ("Advance 2") to the Debtor's
Account by wire transfer.

32.    Rather than paying for costs to renovate the Property, Shannon transferred Advance
2 to several parties in varying amounts, including $2,500 to IOLTA #5012.

**2.    Debtor's Loan from IFP Fund I, LLC**

33.    On or about June 29, 2023, Shannon arranged for the Debtor to borrow funds from
IFP Fund I, LLC ("IFP") and to execute documents in connection therewith, including a Mortgage,
Assignment of Leases and Rents, and Security Agreement granting a mortgage on the Property (the
"IFP Mortgage") to IFP in the face amount of $903,100 for the stated purpose of paying off the
amounts owed to Loan Funder as holder of the first mortgage and for funds needed for the
renovation of the Property.  Jeramy Curcio signed the IFP Mortgage as Manager of the Debtor.

34.    Shannon represented the Debtor in connection with the loan transaction with IPF,
prepared the application on behalf of the Debtor, acted as the Settlement Agent in connection with
the closing on the loan and prepared closing documents, including a HUD Settlement Statement.

35.    At the closing, after deducting a $268,700 construction holdback and additional
amounts for transfer of fees and other charges, IFP advanced $637,284.99 (the "IFP Funds") to the
Debtor by wire into IOLTA #5012.

36.     Notwithstanding his obligations as closing attorney for the Debtor's loan from IFP, which was funded on June 30, 2023, Shannon did not record the IFP Mortgage until March 19, 2024.

37.     Instead of using the IFP Funds to pay off the Loan Funder Loan and discharge the Loan Funder Mortgage or to provide funds to the Debtor to renovate the Property, Shannon transferred all or substantially all of the IFP Funds from IOLTA #5012 into the Debtor's Account, and then transferred the IFP Funds out of the Debtor's Account, for himself and other third parties for his or their benefit and not for the Debtor's benefit, including but not limited to as follows:

  (i)     Between 7/3/23 and 7/11/23, Shannon transferred a total of $305,000 to his personal bank account at Citizens, Account No. 9062.

  (ii)    Between 7/2/23 and 7/6/23, Shannon transferred $39,000 to the account under the name Law Office of Christopher A. Shannon, bank account at Citizens, Account No. 8647.

  (iii)   Between 7/3/23 and 7/11/23, Shannon transferred $240,000 to Citizens Account No. 0248, which account is in the name of Joseph B. Solans.

38.     Upon information and belief, Solans and his wholly-owned Massachusetts limited liability company, La Libra Real Estate Holdings, LLC ("La Libra") are clients of Shannon and Shannon is an authorized signatory on the Citizens bank accounts maintained by Solans and by La Libra.

39.     Upon further information and belief, on July 25, 2023, some or all of the Debtor's $240,000 in funds were utilized by Shannon and Solans for La Libra to purchase certain real property located at 36 Brookledge Street, Boston, MA (the "Brookledge Property") for $1,105,000.

40.     Less than one month later, on August 21, 2023, La Libra sold the Brookledge Property to 36 Brookledge Real Estate Holdings LLC ("Brookledge") for $1.85 million. Curcio, the principal of the Debtor, is the sole manager of Brookledge. Upon information and belief, Shannon

9

represents Brookledge. Shannon is the resident agent of Brookledge and recorded the deed from La Libra to Brookledge.

41.     Upon information and belief, the funds from the sale of Brookledge Property were retained by Shannon, Solans and/or Curcio and no funds were paid to the Debtor.

**3.     Debtor's Loan from Erik Levy**

42.     On or about January 26, 2024, Shannon arranged for the Debtor to borrow funds from Eric Levy ("Levy") and to execute documents in connection therewith, including ta promissory note in the face amount of $175,000 (the "Levy Note") and a Mortgage in the amount of $175,000 (the "Levy Mortgage") for the stated purpose of paying debt service to the Debtor's lenders and to renovate the Property.

43.     Shannon executed the Levy Note and the Levy Mortgage as Manager of the Debtor.

44.     Shannon represented the Debtor in connection with the loan transaction with Levy, prepared the loan documents, acted as the Settlement Agent in connection with the closing on the loan and prepared closing documents, including a HUD Settlement Statement.

45.     On January 26, 2024, Levy caused an entity in which he had an interest, Save that Stuff, Inc., to wire the amount of $175,000 (the "Levy Funds") into Shannon's IOLTA Account at Citizens ending in 8570 ("IOLTA #8570").

46.     Notwithstanding his obligations as closing attorney, Shannon recorded the Levy Mortgage, which was funded on January 26, 2024, on March 19, 2024, shortly after the IFP Mortgage was recorded.

47.     Instead of using the Levy Funds to pay debt service or to provide funds to the Debtor to renovate the Property, Shannon transferred all or substantially all of the Levy Funds from IOLTA #5012 as follows:

(i)     On 1/29/24, Shannon withdrew $3,300 and deposited it into Solans' Citizens account the same day.

10

(ii)    On 1/29/24, Shannon caused a wire of $122,909.53 to be sent to Boston Bullion, a dealer of gold, silver and other precious metals.

(iii)    On 2/1/24, Shannon caused a wire of $37,500 to be sent to 10142002 Mill LLC, purportedly for an excess deposit in connection with a closing for certain real property known as 276 Mill Street.

(iv)    Shannon transferred approximately $11,000 in additional funds to several recipients in varying amounts, including to a unknown account at Citizens, to account under the name Law Office of Christopher A. Shannon, and to Solans' account.

## C.    ASSERTION OF FIFTH AMENDMENT BY CURCIO AND SHANNON

48.    On July 3, 2024 (the "Conversion Date"), this case was converted to one under Chapter 7, and thereafter, the Trustee was appointed.

49.    The Debtor's case was converted in substantial part due its failure to comply with its obligations as a debtor pursuant to 11 U.S.C. §521, its failure to obey Court orders, including to file a Schedule A/B/ and a Statement of Financial Affairs, and its failure to cooperate with or respond to inquiries of the United States Trustee, including with respect to the request for an accounting of the proceeds of the approximately $775,000 in loans from IFP and Levy.

50.    Since the Conversion Date, the Trustee has repeatedly attempted, without success, to compel the Debtor to file a Schedule A/B and a Statement of Financial Affairs and turnover the Debtor's books and records.  Among other things, the Trustee filed a motion to compel the Debtor's production of documents, which was allowed by the Court, but no documents were produced by the Debtor in response.

51.    On August 6, 2024, Mr. Curcio appeared for the initial Section 341 meeting of the Debtor.  The Trustee conducted a preliminary examination of Mr. Curcio over the repeated objections of Shannon.

52.    The Trustee continued the meeting in order to obtain the Debtor's books and records, including its bank statements, again without success.

11

837580v1

53.     At the continued Section 341 meeting held on September 12, 2024, Mr. Curcio

appeared for a continued Section 341 meeting accompanied by counsel representing him personally.

Shannon did not appear and sent an email to the Trustee during the meeting stating that he would be

withdrawing from the Debtor's case.

54.     During the Section 341 meeting, Mr. Curcio's counsel stated that she had advised

her client to invoke the Fifth Amendment in response to the Trustee's questions, and Mr. Curcio

testified that he intended to follow her advice and invoke the Fifth Amendment in response to any

and all questions posed by the Trustee.

55.     Thereafter, the Trustee continued the Section 341 meeting and filed a motion to

compel Curcio to testify, which motion was allowed by the Court.  Following discussions between

the Trustee and Curcio's counsel, Curcio produced limited documents and represented that Shannon

maintained the Debtor's books and records.

56.     Since the Petition Date, the United States Trustee has been attempting to obtain

documents from the Debtor and to obtain the cooperation of Shannon.  On September 30, 2024, the

United States Trustee served a subpoena upon Shannon requiring the production of the Debtor's

books and records of the Debtor, including with respect to the disposition of the IFP Funds and the

Levy Funds, and with respect to his relationship to the Debtor.  The United States Trustee also

subpoenaed Shannon to compel his appearance at a Bankruptcy Rule 2004 examination.

57.     Shannon declined to comply the with subpoena and instead asserted a blanket Fifth

Amendment privilege with respect to the production of documents and with respect to providing

testimony at a 2004 examination.

58.     After reaching an agreement with the United States Trustee, on November 14, 2024,

Shannon produced documents to the United States Trustee through his personal counsel, including

bank statements for the Debtor's account at Citizens, loan documents pertaining to the mortgages

against the Property, and heavily redacted bank statements for his IOLTA accounts at Citizens.

C.     **SHANNON'S DIVERSION OF FUNDS FROM THE DEBTOR**

59.     During the two years prior to the Petition Date, Shannon diverted not less than

$850,000 (the "Diverted Funds") of the Debtor's funds, consisting of the Initial Advance, Advance

1, Advance 2, the IFP Funds, and the Levy Funds, from the Debtor's bank accounts and/or from

funds he was holding on the Debtor's behalf in his IOLTA Account, to pay himself, , and/or other

third parties for his or their benefit and not for the benefit of the Debtor.

### COUNT I
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 548, 550 AND 551
(AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW
OFFICE OF CHRISTOPHER A. SHANNON)**

60.     The Trustee repeats and reasserts the allegations contained in the paragraphs

above and by reference incorporates them herein.

61.     The Diverted Funds were transferred within two years of the Petition Date.

62.     The transfers of the Diverted Funds constituted transfers of an interest of the

Debtor in property.

63.     The Diverted Funds were transferred with an actual intent to hinder, delay or

defraud creditors to which the Debtor was or became indebted.

64.     At all relevant times, Shannon was an insider of the Debtor.

65.     The transfers of the Diverted Funds were concealed.

66.     At the time that the Diverted Funds were transferred, the Debtor was insolvent or

became insolvent as a result of the transfer of the Diverted Funds.

67.     The Debtor did not receive reasonably equivalent value in exchange for the

transfer of the Diverted Funds.

68.     The transfers of the Diverted Funds may be avoided by the Trustee as fraudulent

transfers pursuant to the provisions of 11 U.S.C. §548(a)(1)(A) and preserved for the Estate

pursuant to 11 U.S.C. §§550 and 551.

13

### COUNT II
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 548, 550 AND 551
(AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW
OFFICE OF CHRISTOPHER A. SHANNON)**

69.     The Trustee repeats and reasserts the allegations contained in the paragraphs

above and by reference incorporates them herein.

70.     The Diverted Funds were transferred within two years of the Petition Date.

71.     The transfers of the Diverted Funds constituted an interest of the Debtor in

property.

72.     The transfer of the Diverted Funds constituted transfers to or for the benefit of

Shannon, for which the Debtor received no or inadequate consideration.

73.     The Debtor was insolvent on the dates that the Diverted Funds were transferred or

was rendered insolvent by the transfer of the Diverted Funds.

74.     At the time the transfers of the Diverted Funds were made, the Debtor was

engaged in a business for which any property remaining was an unreasonably small capital.

75.     At the time the Diverted Funds were transferred by the Debtor, the Debtor

intended to incur, or believed that the Debtor would incur, debts that would be beyond the

Debtor's ability to pay as such debts matured.

76.     The transfers of the Diverted Funds may be avoided by the Trustee as fraudulent

transfers pursuant to 11 U.S.C. §548(a)(1)(B) and preserved for the Estate pursuant to the

provisions of 11 U.S.C. §§550 and 551.

### COUNT III
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 550 AND 551 AND
M.G.L. CH. 109A § 5(A)(1)
(AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW
OFFICE OF CHRISTOPHER A. SHANNON)**

77.     The Trustee repeats and reasserts the allegations contained in the paragraphs

above and by reference incorporates them herein.

14

837580v1

78.     The Diverted Funds were transferred within two years of the Petition Date.

79.     The Diverted Funds constitute an interest of the Debtor in property.

80.     A creditor existed whose claim arose before or after the Diverted Funds were transferred.

81.     The Diverted Funds were transferred with actual intent to hinder, delay, or defraud a creditor of the Debtor.

82.     At all relevant times herein, Shannon was an insider of the Debtor.

83.     The transfers of the Diverted Funds were concealed.

84.     At the time that the Diverted Funds were transferred, the Debtor was insolvent or became insolvent as a result of the Diverted Funds.

85.     The Debtor did not receive reasonably equivalent value in exchange for the Diverted Funds.

86.     The transfer of the Diverted Funds may be avoided by the Trustee as fraudulent transfers pursuant to 11 U.S.C. §544 and Mass. General Laws Ch. 109A § 5(a)(1) and recovered and preserved for the Estate pursuant to 11 U.S.C. §§550 and 551.

### COUNT IV
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 550 AND 551 AND M.G.L. CH. 109A § 5(A)(2)
(AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON)**

87.     The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

88.     The Diverted Funds were transferred within two years of the Petition Date.

89.     The Diverted Funds constituted an interest of the Debtor in property.

90.     A creditor existed whose claim arose before or after the Diverted Funds were transferred.

15

91.     The transfers of the Diverted Funds constituted transfers to or for the benefit of Shannon for which the Debtor received no or inadequate consideration.

92.     The Debtor was insolvent on the dates the Diverted Funds were transferred or was rendered insolvent by the transfer of the Diverted Funds.

93.     At the time the transfers of the Diverted Funds were made, the Debtor was engaged in a business for which any property remaining was an unreasonably small capital.

94.     At the time the Diverted Funds were transferred by the Debtor, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

95.     The transfers of the Diverted Funds may be avoided by the Trustee as fraudulent transfers pursuant to the provisions of 11 U.S.C. §544 and Mass. General Laws Ch. 109A § 5(a)(2) and recovered and preserved for the Estate pursuant to 11 U.S.C. §§550 and 551.

<u>COUNT V</u>
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 550 AND 551 AND M.G.L. CH. 109A § 6(A) AND (B)**
**(AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON)**

96.     The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

97.     The Diverted Funds were transferred within two years of the Petition Date.

98.     The Diverted Funds constituted an interest of the Debtor in property.

99.     The Debtor transferred the Diverted Funds without receiving reasonably equivalent value in exchange.

100.    The Debtor was insolvent on the dates the Diverted Funds were transferred or was rendered insolvent by the transfer of the Diverted Funds.

16

101.    The Debtor transferred the Diverted Funds to insiders, the Debtor was insolvent at the time, and Shannon had reasonable cause to believe the Debtor was insolvent.

102.    The transfers of the Diverted Funds may be avoided by the Trustee as fraudulent transfers pursuant to the provisions of 11 U.S.C. §544 and Mass. General Laws Ch. 109A § 6(a) and (b) and recovered and preserved for the Estate pursuant to 11 U.S.C. §§550 and 551.

## COUNT VI
### AVOIDANCE OF INSIDER PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 550 AND 551
### (AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON)

103.    The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

104.    Shannon is an insider of the Debtor.

105.    The Diverted Funds were property of the Debtor.

106.    All or the majority of the Diverted Funds were transferred within one year of the Petition Date.

107.    The Diverted Funds were transferred to Shannon or for the benefit of Shannon on account of an antecedent debt of the Debtor owed to Shannon.

108.    The Diverted Funds were transferred when the Debtor was insolvent.

109.    The Diverted Funds caused Shannon to receive more than he would receive if (i) this case were one under Chapter 7, (ii) the Diverted Funds had not been transferred; and (iii) Shannon received transfer of such debt provided by the provisions of Title 11.

110.    The transfers of the Diverted Funds may be avoided by the Trustee as insider preferential transfers pursuant to the provisions of 11 U.S.C. §547, and recovered and preserved for the Estate pursuant to 11 U.S.C. §§550 and 551.

17

837580v1

## COUNT VII
### DAMAGES FOR BREACH OF FIDUCIARY DUTIES
### (AGAINST CHRISTOPHER A. SHANNON)

111.    The Trustee restates the allegations contained in the aforementioned paragraphs as fully restated herein.

112.    Shannon, as counsel to the Debtor, manager of the Debtor, and person in control of the Debtor, stood in a fiduciary relationship to the Debtor and owed fiduciary duties to the Debtor under applicable Massachusetts law.

113.    Shannon, as counsel to the Debtor, manager of the Debtor, and person in control of the Debtor, had the faith, confidence and trust of the Debtor and therefore owed fiduciary duties to the Debtor.

114.    Among other obligations, Shannon had an obligation: (i) to exercise due care and diligence in the management and administration of the Debtor and in the use and preservation of the Debtor's property, funds and assets; (ii) to ensure that the Debtor did not engage in any unsound management and investment practices; (iii) to deal fairly and honestly with the Debtor; and (iv) to act in a responsible and lawful manner, with undivided loyalty.

115.    Shannon breached his fiduciary duties to the Debtor by causing the intermingling of the activities and operations of the Debtor and his personal affairs, causing the Debtor to pay him and/or other third parties for his or their benefit and not the Debtor's benefit.

116.    Shannon breached his fiduciary duties to the Debtor by causing the Debtor to fail to observe appropriate formalities and to function his façade or alter ego.

117.    Shannon breached his fiduciary duties to the Debtor by causing the Debtor to pay funds for Shannon,  and/or other third parties for Shannon's benefit and not the Debtor's benefit without restriction and without substantiating documents.

18

837580v1

118.    Shannon breached his fiduciary duties to the Debtor by failing to respect the Debtor as a separate legal entity, but instead treating the Debtor's funds as his own and consistently using them for himself and/or other third parties for his or their benefit and not the Debtor's benefit.

119.    Shannon breached his fiduciary duties to the Debtor by causing the Debtor to become insolvent upon its acquisition and funding of the Property and causing the Debtor to continue to incur debt it had no ability to repay.

120.    Shannon breached his fiduciary duties to the Debtor by failing to maintain and/or produce business records from which the flow of funds for himself, and/or third parties for his or their benefit and not the Debtor's benefit could be traced.

121.    Shannon breached his fiduciary duties to the Debtor by causing the Debtor to pay the Diverted Funds when the Debtor was insolvent.

122.    Shannon breached his fiduciary duties to the Debtor by failing to maintain business records on behalf of the Debtor from which the Debtor's financial condition could be ascertained.

123.    The Trustee is entitled to a judgment against Shannon for damages arising from his breach of his fiduciary duties to the Debtor.

<u>COUNT VIII</u>
**PIERCING THE CORPORATE VEIL AND HOLDING CHRISTOPHER A. SHANNON PERSONALLY LIABLE FOR DEBTS OF DEBTOR**

124.    The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

125.    At all relevant times herein, Shannon exercised pervasive control of the Debtor.

126.    Shannon, as the person in control of the Debtor, caused intermingling of activities and operations of the Debtor and his personal affairs by causing the Debtor to pay himself, and/or

837580v1

other third parties for his or their benefit and not the Debtor's benefit and without a business purpose. Among other things, Shannon transferred $305,000 of the IFP Funds belonging to the Debtor to his personal bank account.

127.    Shannon, as person in control of the Debtor, wrongfully and systematically diverted assets from the Debtor for himself and/or other third parties for his or their benefit and not the Debtor's benefit.

128.    Shannon, as person in control of the Debtor, failed to observe appropriate corporate formalities and caused the Debtor to simply function as a façade or his alter ego.

129.    Shannon, as person in control of the Debtor, failed to maintain and/or produce business records so that the flow of funds for his personal benefit could be traced.

130.    Shannon, as the person in control of the Debtor, used the corporation to perpetrate a fraud upon its creditors.

131.    Shannon's actions deprived the Debtor of necessary capital for its operations and caused the Debtor's financial condition to deteriorate significantly.

132.    At all relevant times herein, the Debtor was thinly capitalized.

133.    At all relevant times herein, the Debtor was insolvent.

134.    Shannon, as the person in control of the Debtor, used the corporation to perpetrate a fraud upon its creditors.

135.    The Trustee is entitled to a judgment piercing the corporate veil and holding Shannon personally liable for the debts of the Debtor.

### COUNT IX
### DAMAGES CAUSED BY LEGAL MALPRACTICE IN REPRESENTING THE DEBTOR
### (AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON)

136.    The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

837580v1

137.   At all relevant times, Shannon represented the Debtor.

138.   At all relevant time, Shannon had a duty to exercise reasonable care and skill in providing legal services to the Debtor for the matters for which he was retained.

139.   In representing the Debtor, Shannon has at all relevant times failed to exercise a reasonable degree of care and skill in providing legal services to the Debtor for the matters for which he was retained.

140.   Shannon failed to exercise reasonable care and skill by negligently advising the Debtor to enter into the Loan Agreement with Loan Funder for the Purchase of the Property, because there would be insufficient funds available from the advance from Loan funder to fund the purchase price for the Property and the needed renovations.

141.   Shannon failed to exercise reasonable care and skill by negligently advising the Debtor to enter into an agreement to borrow funds from IFP and grant the IFP Mortgage when he intended to use the IFP Funds for his personal benefit rather than pay off the Loan Funder Loan and obtain a discharge the Loan Funder Mortgage.

142.   As a result of Shannon's negligent representation of the Debtor in connection with obtaining a loan from IFP, the Debtor incurred debt to IFP that it had no ability to pay.

143.   Shannon failed exercise reasonable care and skill by negligently advising the Debtor to enter into an agreement to borrow the Levy Funds and grant the Levy Mortgage when he intended to use the Levy Funds for his personal benefit rather than paying any of the Debtor's existing debt or funding renovations of the Property.

144.   As a result of Shannon's negligent representation of the Debtor in connection with loan from Levy, the Debtor incurred debt to Levy that it had no ability to pay.

145.   As a result of Shannon's negligent legal representation, the Debtor has incurred losses.

837580v1

146.    Shannon's negligent legal representation was the proximate cause of the Debtor's losses.

147.    The Trustee is entitled to damages from Shannon equal to the amount of its losses incurred as a result of Shannon's legal malpractice.

**COUNT X**
**CONVERSION**
**(AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON**

148.    The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

149.    Shannon converted some or all of the Diverted Funds for his personal use.

150.    Shannon intentionally and wrongfully exercised dominion and control over the Diverted Funds.

151.    The Debtor had an ownership interest in the Diverted Funds.

152.    Shannon wrongfully retained the Diverted Funds.

153.    Shannon's wrongful possession and retention of the Diverted Funds constitutes conversion.

154.    The wrongful conversion of the Diverted Funds was fraudulently concealed by Shannon in his failure or refusal as counsel to the Debtor and person in control of the Debtor to file the Schedules and Statement of Financial Affairs, his failure or refusal as counsel to the Debtor and person in control of the Debtor to comply with Court orders regarding the production of documents relating to the disposition of the Diverted Funds.

155.    As a direct and proximate result of Shannon's conversion of the Diverted Funds, Shannon has caused the Debtor to suffer damages.

837580v1

## COUNT XI

### DAMAGES CAUSED BY LEGAL MALPRACTICE IN CONNECTION WITH THE ACTIONS OF CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON
### (AGAINST WALTERS, SHANNON & JENSEN, R. JACOB WALTERS AND DAVID J. JENSEN)

156.    The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

157.    Defendants Attorneys Shannon, Walters and Jensen held themselves out to the public as attorneys doing business as the WSJ Firm and maintaining offices at 27 Harvard Avenue, Brookline, Massachusetts.

158.    At all relevant times, Shannon represented the Debtor and had a duty to exercise reasonable care and skill in providing legal services to the Debtor for the matters for which he was retained.

159.    In representing the Debtor, Shannon at all relevant times failed to exercise a reasonable degree of care and skill in providing legal services to the Debtor for the matters for which he was retained.

160.    Defendants the WSJ Firm, Walters and Jensen, had a duty to use reasonable efforts to ensure Shannon's compliance with his ethical responsibilities as an attorney and to prevent Shannon's misconduct.

161.    Defendants the WSJ Firm, Walter and Jensen, failed to use reasonable efforts to ensure that the WSJ Firm had procedures in place giving reasonable assurance that Shannon would comply with his ethical responsibilities as an attorney and not engage in misconduct.

162.    The Trustee is entitled to damages from the Defendants the WSJ Firm, Walters and Jensen equal to the amount of its losses incurred as a result of Shannon's legal malpractice.

837580v1

## COUNT XII
### INJUNCTIVE RELIEF
### (AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON)

163.   The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

164.   The Defendant Shannon has diverted the funds of the Debtor for himself and/or third parties for his or their benefit and not the benefit of the Debtor.

165.   Shannon has engaged in a practice of willfully diverting and concealing assets of the Debtor.

166.   It is reasonably likely that Shannon will continue this practice.

167.   Absent the entry of a temporary restraining order, assets may be transferred, absconded, encumbered, and placed out of reach such that they are not available to satisfy a judgment the Trustee is likely to obtain.

168.   There is a reasonable likelihood that the Trustee will be successful in obtaining a judgment in favor of the Estate with respect to his claims against Shannon.

169.   Unless the injunctive relief requested by the Trustee is granted, the Trustee will suffer irreparable harm because he may be unable to obtain satisfaction of the judgment he is likely to obtain.

170.   The harm that will be suffered by the Trustee if the injunctive relief is not granted substantially outweighs any harm to Shannon.

171.   Granting the injunction will not have any adverse effect on the public interest.

172.   The Trustee is entitled to injunctive relief restraining and enjoining Shannon and all persons in active concert with him from conveying, transferring, encumbering, or otherwise disposing of any assets pending a determination of the Trustee's claims.

24

### COUNT XIII
### TRUSTEE PROCESS ATTACHMENT UPON BANK ACCOUNTS AT CITIZENS BANK, N.A.
### (AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON)

173.    The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

174.    The Defendant Shannon has diverted the funds of the Debtor for himself and/or other third parties for his or their benefit and not the Debtor's benefit.

175.    Shannon has engaged in a practice of willfully diverting and concealing assets of the Debtor.

176.    It is reasonably likely that Shannon will continue this practice.

177.    The Trustee is likely to obtain a judgment equal to or greater than the amount of the requested trustee process attachment.

178.    Shannon maintains multiple accounts at Citizens.

179.    The Trustee may use trustee process to ensure satisfaction of a judgment for damages.

180.    The Trustee is entitled to a trustee process attachment in the amount of $850,000 against Trustee Process Defendant Citizens Bank, N.A., attaching the funds, goods, effects or credits, on deposit or otherwise, that it holds in the name of Christopher A. Shannon individually and/or the Law Offices of Christopher A. Shannon, except for the IOLTA accounts numbered 5012 and 8570.

### COUNT XIV
### TRUSTEE PROCESS ATTACHMENT UPON BANK ACCOUNTS AT SANTANDER BANK, N.A.
### (AGAINST CHRISTOPHER A. SHANNON INDIVIDUALLY AND DOING BUSINESS AS THE LAW OFFICE OF CHRISTOPHER A. SHANNON)

181.    The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

837580v1

182. The Defendant Shannon has diverted the funds of the Debtor for his himself and/or to other third parties for his or their benefit and not the Debtor's benefit.

183. Shannon has engaged in a practice of willfully diverting and concealing assets of the Debtor.

184. It is reasonably likely that Shannon will continue this practice.

185. The Trustee is likely to obtain a judgment for damages against Shannon.

186. Shannon maintains business and personal accounts at Santander Bank, N.A.

187. The Trustee may use trustee process to ensure satisfaction of a judgment for damages.

188. The Trustee is entitled to a trustee process attachment in the amount of $850,000 against Trustee Process Defendant Santander Bank, N.A., attaching the funds, goods, effects or credits, on deposit or otherwise, that it holds in the name of Christopher A. Shannon individually or doing business as The Law Office of Christopher A. Shannon.

**C<small>OUNT</small> XV**
**T<small>RUSTEE</small> P<small>ROCESS</small> A<small>TTACHMENT</small> U<small>PON</small> B<small>ANK</small> A<small>CCOUNTS AT</small> E<small>ASTERN</small> B<small>ANKSHARES</small>, I<small>NC.</small>**
**(A<small>GAINST</small> C<small>HRISTOPHER</small> A. S<small>HANNON</small> I<small>NDIVIDUALLY AND</small> D<small>OING</small> B<small>USINESS AS THE</small> L<small>AW</small>**
**O<small>FFICE OF</small> C<small>HRISTOPHER</small> A. S<small>HANNON</small>)**

189. The Trustee repeats and reasserts the allegations contained in the paragraphs above and by reference incorporates them herein.

190. The Defendant Shannon has diverted the funds of the Debtor to himself and/or to other third parties for his or their benefit and not the Debtor's benefit.

191. Shannon has engaged in a practice of willfully diverting and concealing assets of the Debtor.

192. It is reasonably likely that Shannon will continue this practice.

193. The Trustee is likely to obtain a judgment for damages against Shannon.

26

194.    Shannon maintains business and personal accounts at Eastern Bankshares, Inc. f/k/a Eastern Bank Corporation.

195.    Shannon maintained business and personal accounts at Cambridge Trust Company, for which Eastern Bankshares, Inc. is a successor by merger.

196.    The Trustee may use trustee process to ensure satisfaction of a judgment for damages.

197.    The Trustee is entitled to a trustee process attachment in the amount of $850,000 against Trustee Process Defendant Eastern Bankshares, Inc., attaching the funds, goods, effects or credits, on deposit or otherwise, that it holds in the name of Christopher A. Shannon individually or doing business as the Law Office of Christopher A. Shannon.

**WHEREFORE**, the Trustee prays that this Court enter judgment as follows:

1.    After an *ex parte* and emergency hearing, pursuant to Count XI of this Complaint, preliminarily enjoining and restraining Defendant Christopher A. Shannon individually and doing business as the Law Office of Christopher A. Shannon and all persons in active concert with him from conveying, transferring, encumbering, or otherwise disposing of any assets until further order of the Court;

2.    After an *ex parte* and emergency hearing, granting the Trustee attachments by trustee process against the Trustee Process Defendants set forth in Counts XII through XIV in the amount of $850,000, attaching the funds, goods, effects or credits, on deposit or otherwise, that the Trustee Process Defendants hold in the name of Defendants Christopher A. Shannon individually or doing business as the Law Office of Christoher A. Shannon, except for the IOLTA accounts at Citizens ending in 5012 and 8570.

3.    On Count I, in favor of the Plaintiff, avoiding the transfer of the Diverted Funds as a fraudulent transfer pursuant to 11 U.S.C. §548(a)(1)(A), such that the Trustee may recover

the Diverted Funds and preserve the avoided transfer for the benefit of the Estate pursuant to 11

U.S.C. §§550 and 551, and directing Defendant Christopher A. Shannon to pay the sum of not

less than $850,000 to the Trustee, plus interest dating from the date of this Complaint;

    4.    On Count II, for the Trustee, avoiding the transfer of the Diverted Funds as a

fraudulent transfer pursuant to 11 U.S.C. §548(a)(1)(B), such that the Trustee may recover the

Diverted Funds and preserve the avoided transfer for the benefit of the Estate pursuant to 11

U.S.C. §§550 and 551, and directing Defendant Christopher A. Shannon to pay the sum of not

less than $850,000 to the Trustee, plus interest dating from the date of this Complaint;

    5.    On Count III, for the Trustee, avoiding the transfer of the Diverted Funds as a

fraudulent transfer pursuant to 11 U.S.C. §544 and M.G.L. Ch. 109A §5(a)(1), such that the

Trustee may recover the Diverted Funds and preserve the avoided transfer for the benefit of the

Estate pursuant to 11 U.S.C. §§550 and 551, and directing Defendant Christopher A. Shannon to

pay the sum of not less than $850, 000 to the Trustee, plus interest dating from the date of this

Complaint;

    6.    On Count IV, for the Trustee, avoiding the transfer of the Diverted Funds as a

fraudulent transfer pursuant to 11 U.S.C. §544 and M.G.L. Ch. 109A §5(a)(2), such that the

Trustee may recover the Diverted Funds and preserve the avoided transfer for the benefit of the

Estate pursuant to 11 U.S.C. §§550 and 551, and directing Defendant Christopher A. Shannon to

pay the sum of not less than $850,000 to the Trustee, plus interest dating from the date of this

Complaint;

    7.    On Count V, for the Trustee, avoiding the transfer of the Diverted Funds as a

fraudulent transfer pursuant to 11 U.S.C. §544 and M.G.L. Ch. 109A §6(a) and (b), such that the

Trustee may recover the Diverted Funds and preserve the avoided transfer for the benefit of the

Estate pursuant to 11 U.S.C. §§550 and 551, and directing Defendant Christopher A. Shannon to

837580v1

pay the sum of not less than $850,000 to the Trustee, plus interest dating from the date of this

Complaint;

8.      On Count VI, for the Trustee, avoiding the transfer of the Diverted Funds as an

insider preferential transfer pursuant to 11 U.S.C. §547, such that the Trustee may recover the

Diverted Funds and preserve the avoided transfer for the benefit of the Estate pursuant to 11

U.S.C. §§550 and 551, and directing Defendant Christopher A. Shannon to pay the sum of not

less than $850,000 to the Trustee, plus interest dating from the date of this Complaint;

9.      On Count VII, for the Trustee, determining that Defendant Christopher A.

Shannon breached his fiduciary duties to the Debtor under applicable Massachusetts law and

awarding damages in an amount to be determined by the Court;

10.     On Count VIII, for the Trustee, piercing the corporate veil, and holding Defendant

Christopher A. Shannon personally liable for the debts of the Debtor;

11.     On Court IX, for the Trustee, awarding damages to the Estate on account of

Defendant the legal malpractice of Defendant Christopher A. Shannon individually and doing

business as the Law Office of Christopher A. Shannon in representing the Debtor;

12.     On Count X, for the Trustee, awarding damages to the Estate on account of

Defendant Christopher A. Shannon individually and doing business as the Law Office of

Christopher A. Shannon for the conversion of the Debtor's funds;

13.     On Count XI, for the Trustee, awarding damages to the Estate against the

Defendants the WSJ Firm, Walters, and Jensen on account of their legal malpractice in in

connection with the actions of Defendant Christopher A. Shannon individually and doing

business as the Law Office of Christopher A. Shannon in representing the Debtor;

14.     On Count XII, for the Trustee, granting injunctive relief against Defendant

Christopher A. Shannon individually and doing business as the Law Office of Christopher A.

837580v1

Shannon and all persons in active concert with him from conveying, encumbering, transferring, selling or otherwise disposing of any assets until further order of the Court;

15.     Continue the Preliminary Injunction against Defendants Christopher A. Shannon individually and doing business as the Law Office of Christopher A. Shannon as a permanent injunction until the Trustee's judgment is satisfied;

16.     On Count XIII, for the Trustee granting the Trustee an attachment by Trustee Process against Trustee Process Defendant Citizens Bank, N.A. in the amount of $850,000, attaching the funds, goods, effects or credits, on deposit or otherwise, that it holds in the name of Defendant Christopher A. Shannon individually and doing business as the Law Office of Christopher A. Shannon;

17.     On Count XIV, for the Trustee granting the Trustee an attachment by Trustee Process against Trustee Process Defendant Santander Bank, N.A. in the amount of $850,000, attaching the funds, goods, effects or credits, on deposit or otherwise, that it holds in the name of Defendants Christopher A. Shannon individually and doing business as the Law Office of Christopher A. Shannon;

18.     On Count XV, for the Trustee granting the Trustee an attachment by Trustee Process against Trustee Process Defendant Eastern Bankshares, Inc. in the amount of $850,000, attaching the funds, goods, effects or credits, on deposit or otherwise, that it holds in the name of Defendants Christopher A. Shannon individually and doing business as the Law Office of Christopher A. Shannon;

19.     Awarding the Trustee his reasonable costs and attorney's fees and pre-and post-judgment interest; and

837580v1

20.    Granting such other relief as is just and proper.

> HAROLD B. MURPHY,
> CHAPTER 7 TRUSTEE OF
> 29 GORHAM STREET LLC,
>
> By his counsel:
>
> */s/ Kathleen R. Cruickshank*
> Harold B. Murphy (BBO #362610)
> Kathleen R. Cruickshank (BBO #559609)
> Murphy & King, Prof. Corp.
> 28 State Street, Suite 3101
> Boston, MA 02109
> (617) 423-0400
> Email: KCruickshank@murphyking.com

Dated: November 21, 2024

## VERIFICATION

The undersigned hereby affirms and swears that the factual allegations set forth in the above Verified Complaint are true and correct to the best of my knowledge, information and belief as of the date set forth below.

Dated: November 21, 2024

> */s/ Harold B. Murphy*
> Harold B. Murphy, Chapter 7 Trustee of 29
> Gorham Street LLC

837580v1